UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| JOSE HIGAREDA GOMEZ,<br><br>                Plaintiff,<br>     v.<br>CITY OF FREMONT, *et al*.,<br><br>                Defendants. | No. C 07-00005 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 64]** |

## I. INTRODUCTION

In this civil rights action alleging claims under 42 U.S.C. § 1983 and state law, Plaintiff Jose Higareda Gomez, appearing *pro se*,[1] asserts that officers of the Fremont Police Department used excessive force when they (A) mistook him for another person with an outstanding felony warrant, (B) restrained him by using a police dog, which bit him on the ankle, (C) shot him with a Taser gun, and (D) thereafter arrested him for resisting arrest. *See* Complaint, ECF No. 75 at 3-10 (claims one, five, six, seven, eight and eleven).[2] Plaintiff also asserts that the police officers acted because of his ethnicity in violation of 42 U.S.C. § 1981 and state law. *Id.* at 5-6 (claims three and four). Finally, Plaintiff asserts that the City of Fremont and the Chief of Police are liable for the officers' actions

---

[1] On March 6, 2010, the Court granted Plaintiff's counsel's motion to withdraw. *See* ECF No. 67. (Court filings in this order are identified by their docket number and page on the Electronic Case Filing ("ECF") docket sheet.)

[2] The copy of Plaintiff's Complaint at ECF No. 1 is missing page 8. A complete copy is in the record at ECF No. 75.

ORDER (C 07-00005 LB)

1  under federal and state law based on a failure to train, a policy and practice of ignoring excessive
2  force, and the doctrine of *respondeat superior*. *Id.* at 4, 7-9. (claims two, nine, and ten).

3  Defendants moved for summary judgment, arguing the following: (A) Plaintiff's only evidence
4  of excessive force is his own contradictory deposition testimony, which does not establish a genuine
5  issue of material fact for the section 1983 and related state claims; (B) there is no evidence of police
6  action based on Plaintiff's ethnicity; and (C) there is no evidence that the City and Police Chief
7  failed to train police officers or had a policy and practice of ignoring excessive force, which
8  precludes liability under federal and state law. Defendants' Summary Judgment Motion, ECF No.
9  64 at 1-2. Plaintiff – who had notice of the requirements for opposing the motion – did not oppose
10 the motion in writing, which Defendants argue is a separate ground for granting summary judgment.
11 Defendant's Reply, ECF No. 72 at 2.

12 The Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion.

13 The Court denies summary judgment on claims one, five, six, eight, and eleven, the federal
14 excessive force claim and the related state claims. Even when a party fails to file an opposition, the
15 Court must review the sufficiency of a summary judgment motion under the summary judgment
16 standard. *See, e.g., Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). Here, the
17 pleadings, discovery and disclosures on file, and declarations show genuine and disputed issues of
18 material fact about what happened and the reasonableness of the officers' conduct and use of force.
19 These disputes cannot be resolved without weighing the evidence and determining credibility, which
20 are functions for the jury, not for the judge at summary judgment. *See Anderson v. Liberty Lobby,*
21 *Inc.*, 477 U.S. 242, 247-48 (1986).

22 To the extent that claim one alleges violations of the First and Eighth Amendments, the Court
23 grants summary judgment for Defendants on those theories of liability. The conduct here implicates
24 only the Fourth Amendment, not the First Amendment or the Eighth Amendment, which applies to
25 prisoners and prohibits cruel and unusual punishment. *See Hudson v. McMillan*, 503 U.S. 1, 6-7
26 (1991). Also, in subsequent pleadings, Plaintiff's counsel limited claim one to the Fourth
27 Amendment.

28 The Court also grants summary judgment for Defendants on claims three and four, the federal

and state claims alleging conduct motivated by Plaintiff's ethnicity, because there is no evidence of improper motive. The Court also grants summary judgment on claims two and nine, the federal and state claims asserting that the City and Chief of Police are liable for the officers' actions based on a failure to train and a policy and practice of ignoring excessive force. The pleadings, discovery, and evidence – including Plaintiff's deposition and admissions at the hearing – do not show a genuine issue of material fact as to these claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

For the same reason, the Court grants summary judgment in part on claim ten, the *respondeat superior* claim, to the extent that it asserts liability for a failure to train or a policy and practice of ignoring excessive force. The Court also grants summary judgment in part on claim ten because there is no *respondeat superior* liability under section 1983. *See Los Angeles Police Protective League v. Gates,* 907 F.2d 887, 889 (9th Cir. 1990). The City and Police Chief may have vicarious liability under state law, however, for excessive force. *See, e.g.*, California Government Code § 815.2(a); *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007). Because Defendants are not entitled to summary judgment on their excessive force claims, they are not entitled to summary judgment on claim ten for vicarious liability under state law.

In sum, the Court **DENIES** summary judgment on claims one (for liability under the Fourth Amendment), five, six, seven, eight, ten (*respondeat superior* liability under state law for excessive force), and eleven. The Court **GRANTS** summary judgment on claim one (for theories of liability under the First and Eighth Amendments), two, three, four, nine, and ten (*respondeat superior* liability under section 1983 and liability based on a failure to train and a policy and practice of ignoring excessive force).

The Court also **ORDERS** the parties to appear for a further settlement conference before United States Magistrate Judge Maria-Elena James on October 6, 2010, at 10 a.m. at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, 94102.

All other dates in the March 6, 2010 Scheduling Order remain in effect. *See* ECF No. 56.

## II. STATEMENT OF FACTS

**A. Officers Go To Plaintiff's Address To Arrest John Gonzales Estrada**

On November 5, 2005, at 9:12 a.m., four Fremont police officers went to 40438 Davis Street,

Fremont, California, to arrest John Gonzales Estrada on a felony warrant for vehicle theft and a misdemeanor warrant for false identification to a police officer and drug paraphernalia. 11/05/05 Report of Officer Tom Severance ("Severance Report"), Exh. D to Declaration of Gregory M. Fox, ECF No. 68 at 24.[3] According to a different police officer involved in Estrada's last arrest, 40438 Davis Street was Estrada's address. *Id.* Plaintiff lived in a one-room cottage or shed behind the house at that address. Plaintiff's Deposition at 35:18-36:7, ECF No. 76.

The officers executing the warrant were Tom Severance, Matthew Snelson, Timothy Baldocchi (and his police dog), and Joshua Ehling. All were in uniform and had a photograph of Estrada. Severance Report, ECF No. 68 at 24; Declarations of Officers Baldocchi and Snelson, ECF Nos. 65 and 66 at 2, ¶ 3; Plaintiff's Deposition at 56:9-12, 56:25-57:2. Black-and-white photocopies of pictures of Plaintiff (from the day of the arrest) and Estrada (presumably from a DMV or booking photograph) are in the record. Exh. E to Fox Declaration, ECF 68 at 26-27; *see* Defendants' 6/21/10 Letter, ECF No. 79. The warrant describes Estrada as a hispanic male, brown hair, brown eyes, 6'2", 240 pounds, date of birth of xx/xx/1984, making him age 21 on November 5, 2005, and it lists an address in Hollister, California. Ex. F to Fox Declaration, ECF No. 68 at 29. The Severance report describes Plaintiff as a hispanic male, brown hair, brown eyes, 5'10, 188 pounds, date of birth xx/xx/1963, making him age 42 that day. Exh. D to Fox Declaration, ECF No. 68 at 24.

When they arrived at 40438 Davis Street, Officers Snelson and Baldocchi covered the back yard, and Officers Severance and Ehring went to the front door. *Id.*; Baldocchi and Snelson Declarations, ECF Nos. 65 and 66 at 2, ¶ 4. Officer Baldocchi crouched, one knee down and with his left hand on his dog's leash, at the rear southwest corner of the house, just opposite the shed where Plaintiff lived. He could see that it had drapes and whispered to Snelson that it appeared to be a residence. Officer Snelson positioned himself on the same south rear side of the main house, about 20 feet away from Officer Baldocchi and his dog. Baldocchi and Snelson Declarations, ECF Nos. 65 and 66 at 2, ¶ 4.

Officer Severance knocked on the front door. After three separate knocks, a man and a woman

---

[3] The Severance police report is attached to a declaration by counsel instead of a declaration by the percipient witness police officer. Ordinarily, affidavits must be made on personal knowledge. Fed. R. Civ. P. 56(e); Civil L. R. 7-5(a). While many details are in other declarations, not all are.

answered. The man said that Estrada no longer lived there. Severance Report, ECF No. 68 at 24.

**B. Plaintiff Comes Out of His Cottage**

Plaintiff came out of his cottage to go to work. Baldocchi Declaration, ECF No. 65 at 2, ¶ 5; Plaintiff's Deposition at 47:11-48:13. Plaintiff saw the two officers, one with a mustache (Officer Baldocchi) crouched down on the left with a dog (about ten or fifteen feet away), and one (Officer Snelson) crouched to the right with a gun pointed at him. Plaintiff's Deposition at 39:12-22, 55:3-58:24. This is consistent with the officers' account of their positions.

According to the officers, Officer Baldocchi yelled, "John! Get on the ground!" Baldocchi Declaration, ECF No. 65 at 2, ¶ 5; Baldocchi 11/05/05 Report, ECF No. 65 at 5; Snelson Declaration, ECF No. 66 at 2, ¶ 5. According to Plaintiff, he heard the officer with the dog (Officer Baldocchi) yell something at him in English, but he could not hear what was said because the dog was barking. *Id.* at 55:25-56:1, 57:22-58:4, 61:8-16. In particular, Plaintiff did not hear the officer yell "John" or make any commands at all. *Id.* at 61:8-16.

The parties differ in their accounts of what happened next, but both agree that at some point, Plaintiff ran back into the shed, the police dog bit Plaintiff on the ankle, and Officer Snelson shot Plaintiff with his taser gun. Baldocchi and Snelson Declarations, ECF Nos. 65 and 66 at 2-3; Plaintiff's Deposition at 61-64.

**1. Plaintiff's account**

When Plaintiff came out of the cottage and heard Officer Baldocchi yelling, Plaintiff threw down his backpack and raised his hands in the air. *Id.* at 39:24-40:24, 57:15-16, 58:13. A photograph shows the backpack where he dropped it. *Id.* at 39:23-40:24, 57:6-10 & Exh. 3. He also saw two other police officers behind the two who were crouched. *Id.* at 58:19-24.

The officer with the dog then let the dog go, and it ran toward Plaintiff with its ears back. To avoid attack, Plaintiff ran back into his cottage. *Id.* at 61:21-25, 63:2-16, 64:16-17. He tried to close the door to keep the dog out and avoid being bitten, but he could not because the officers pushed back so hard that he fell back onto his bed. *Id.* at 61:33-65:7. It was so hard that he "didn't know if they like kicked it or if all of them at the same time pushed it." *Id.* at 62:1-3. The police dog came in and bit Plaintiff on the ankle, causing Plaintiff to scream. *Id.* at 65:1-4, 66:4-7, 67:2-6.

ORDER (C 07-00005 LB)                                5

1 Photographs show the injuries to his ankle. *Id.*, Exh. 4.

2 An officer came in, hit the dog twice on the head and pulled it away from Plaintiff, and said, "get out." Plaintiff believed the officer was talking to him, got up, and went out the door, his hands at his side. The officer with the dog remained in the cottage. *Id.* at 65:11-72:15. As Plaintiff stepped out of the cottage, an officer shot him with the taser gun, hitting him on his back. *Id.* at 65:16-19, 68:7-13; 74:5-13, 79-80.) He heard only one shot, but doctors took two darts out at the hospital. *Id.* at 83. A photograph shows the injury to his back. *Id.* at 65, 79-80 & Exh. 4. Plaintiff fell to the ground, and officers cuffed his arms behind his back. *Id.* at 82:25- 84:2-10, 92:11-16.

**2. Defendants' account**

When Plaintiff came out of the cottage, Officer Baldocchi thought he matched the description of target John Estrada and thus yelled, "John! Get on the ground." Plaintiff looked at Officer Baldocchi, turned, and ran back into the cottage. Officer Baldocchi yelled at Plaintiff to stop or Officer Baldocchi would release the dog. Plaintiff did not stop. Baldocchi Declaration, ECF No. 65 at 2, ¶ 5; Baldocchi 11/05/05 Report, ECF No. 65 at 5; Snelson Declaration, ECF No. 66 at 2, ¶ 5. Officer Baldocchi ran after Plaintiff but did not release the dog. Baldocchi Declaration at ¶¶ 5-6. Plaintiff ran into the cottage and tried to close the door but could not. *Id.* at ¶ 6.

The accounts of why Plaintiff could not close the door, and how officers forced the door open, and when the dog ran in, vary in the same-day police reports and the officers' later declarations.

According to Officer Baldocchi's report, Plaintiff "attempted to close the door on me," and "I kicked the door open." Officer Baldocchi saw two large butcher knives on a shelf within Plaintiff's reach, and he then released the dog into the shed. The dog bit Plaintiff several times on the ankle, and Plaintiff struggled with the dog until Officer Snelson tased Plaintiff. Plaintiff then fell to the ground. Baldocchi 11/05/05 Report, ECF No. 65 at 5.

According to Officer Snelson's report, he saw Plaintiff "attempt to shut the door" and the dog "run into the room just prior to [Plaintiff] closing the door. Officer Baldocchi forced open the door." Because Plaintiff continued to resist Officer Baldocchi and the dog, Officer Snelson fired his Taser, striking Plaintiff on the left side, and ordered Plaintiff to the ground. Plaintiff "complied with . . . the commands and went to the ground placing his hands out to his side." Snelson 11/05/05 Report,

UNITED STATES DISTRICT COURT
For the Northern District of California

ECF No. 65 at 5.

Both police reports thus report that Officer Baldocchi "kicked" (Baldocchi Report) or "forced" (Snelson Report) the door open, and neither report mentions that Officer Snelson helped force the door open. Also, the reports differ as to when the dog ran in (before or after Officer Baldocchi forced open the door) and whether Plaintiff fell to the ground or complied with an order to get down. Neither mentions where Officer Snelson was when he tased Plaintiff.

Both declarations, by contrast, describe both officers forcing the door open together and the dog's entering thereafter. According to both officers, when Plaintiff tried to close the door, Officer Baldocchi prevented the door from closing fully by pushing up against it with the right side of his body. Officer Snelson then ran up and together, they forced the door open 18 inches. Baldocchi Declaration, ECF No. 65 at 2, ¶ 6; Snelson Declaration, ECF No. 66 at 2, ¶ 6. Officer Baldocchi saw the two knives on a table. Baldocchi Declaration at ¶ 6. He then warned Plaintiff to stop pushing or he would send in the dog. Plaintiff did not stop. Officer Baldocchi then sent the dog into the shed. *Id.* at *¶* 7; Snelson Declaration at ¶ 7. Officer Snelson entered the shed after Officer Baldocchi and the dog. Snelson Declaration at ¶ 7. The dog bit Plaintiff on the ankle, and Plaintiff continued to resist by kicking at the dog and thrashing his arms despite Officer Baldocchi's orders to stop. Officer Snelson then tased Plaintiff once in the left chest, and the officers took Plaintiff into custody. Baldocchi Declaration at *¶* 7; Snelson Declaration at ¶ 7.

**C. Plaintiff's Arrest For Resisting Arrest**

The police officers arrested Plaintiff for resisting arrest, a misdemeanor, in violation of California Penal Code section 148(a)(1). *See, e.g.*, Baldocchi Report, Exh. A to Baldocchi Declaration, ECF No. 65 at 7. At the criminal trial on April 27, 2008, the state court dismissed the charges. Plaintiff's Counsel's 6/22/09 letter, ECF No. 22.

**D. The Federal Complaint**

Plaintiff sued the City of Fremont, the Police Chief, and Officers Baldocchi, Severance, Snelson, Ehling, and Kratz in Alameda County on November 27, 2006, and Defendants removed the case to federal court on January 3, 2007. Complaint, ECF Nos. 1 and 75. The remaining defendants are the City, the Police Chief, and Officers Baldocchi and Snelson. *Id.*; ECF No. 41. Plaintiff asserts the

following eleven claims in his complaint:

One: 42 U.S.C. § 1983 claim against all defendants for (a) excessive force and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution, (b) cruel and unusual punishment in violation of the Eighth Amendment, and (c) violation of the freedom of expression protected by the First Amendment. ECF No. 75 at 3-4, ¶¶ 11-13.

Two: 42 U.S.C. § 1983 claim under *Monell* against the City and Police Chief for deliberate indifference and a failure to respond with preventative measures to a pattern and practice of excessive force and false arrest. *Id.* at 4-5, ¶¶ 14-16.

Three: 42 U.S.C. § 1981 claim against all defendants for conduct motivated by Plaintiff's ethnicity. *Id.* at 5, ¶¶ 17-21.

Four: California Civil Code § 51.7 claim against all defendants for conduct motivated by Plaintiff's ethnicity. *Id.* at 5, ¶¶ 22-25.

Five: State-law assault claim against all defendants. *Id.* at 5, ¶¶ 26-29.

Six: State-law battery claim against all defendants. *Id.* at 7, ¶¶ 30-33.

Seven: State-law claim for intentional infliction of emotional distress against all defendants. *Id.* at 7, ¶¶ 34-36.

Eight: State-law negligence claim against police officers. *Id.* at 7-8, ¶¶ 37-38.

Nine: State-law negligent training claim against City and Police Chief. *Id.* at 8, ¶¶ 39-44.

Ten: *Respondeat Superior* claim against City and Police Chief. *Id.* at 9, ¶¶ 45-47.

Eleven: California Civil Code § 52 *et seq.* claim (presumably under § 52.1) against all defendants for interference with rights secured by federal or state law. *Id.* at 9-10, ¶¶ 48-52.

The parties have consented to magistrate judge jurisdiction. ECF Nos. 9-10, 50, 57-58.

While Plaintiff was represented by counsel, the parties' joint management statements filed in April 2007 and September 2008 limited the legal issues to the following: (1) was the arrest lawful; (2) was the force excessive; (3) were the officers entitled to qualified immunity; (4) is there *Monell* or state-law liability for failure to train; (5) was there improper ethnicity-based animus in violation of 42 U.S.C. § 1981 and state law; and (6) is there a violation of state laws (that is, assault, battery, intentional infliction of emotional distress, negligence, and deprivation of rights protected under federal and state law). *See* ECF Nos. 16 at 3-4, 26 at 3.

Based on the Court's March 6, 2010, scheduling order, *see* ECF No. 56, Defendants moved for summary judgment on May 6, 2010. ECF No. 64. At a status conference that same day, the Court allowed Plaintiff's counsel to withdraw, entered Plaintiff's appearance *pro se*, provided Plaintiff

1  with the civil local rules and English- and Spanish-language versions of the district court's
2  Handbook for Litigants Without a Lawyer (which discusses how to oppose a motion for summary
3  judgment), discussed the Pro Se Help desk, and reviewed with Plaintiff the process for opposing
4  Defendants' motion for summary judgment and the filing deadline of May 27, 2010.  *See* ECF No.
5  71.  At the hearing, Plaintiff's counsel also represented that she had explained all rules and filing
6  deadlines to Plaintiff.   Plaintiff nonetheless did not file an opposition.  On June 17, 2010, the Court
7  heard oral argument from both sides.  Plaintiff, who does not speak English fluently, *see* Plaintiff's
8  Deposition at 14, had a friend assist with translation during the hearing.

### III.  SUMMARY JUDGMENT STANDARD AND FAILURE TO FILE OPPOSITION

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the outcome of the case.  *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587.

Here, Plaintiff did not file a brief, and Defendants thus assert that the Court should grant

summary judgment. *See* Defendants' Reply, ECF No. 72 at 2. A court may not grant a summary judgment motion solely because the opposing party fails to file an opposition. The court must still review the sufficiency of Defendants' motion under the summary judgment standard. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003) (local rule cannot mandate automatic entry of judgment for moving party without considering whether motion satisfies Rule 56); *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

## IV. DISCUSSION

**A. Excessive Force Claims (Claims One, Five, Six, Seven, Eight, and Eleven)**

Plaintiff asserts that officers of the Fremont Police Department used excessive force when they (A) mistook him for another person with an outstanding felony warrant, (B) restrained him by using a police dog, which bit him on the ankle, (C) shot him with a Taser gun, and (D) thereafter arrested him for resisting arrest. *See* Complaint, ECF No. 75 at 3-10 (claims one, five, six, seven, eight, and eleven). That conduct, he argues, violates the Fourth Amendment and thus 42 U.S.C. § 1983 (count one), and it also establishes liability under state law for assault, battery, intentional infliction of emotional distress, negligence, and deprivation of rights secured by federal and state law under California Civil Code §§ 52 and 52.1 (claims five, six, seven, eight, and eleven).

Defendants counter that the Court nonetheless should grant summary judgment because Plaintiff's only evidence of excessive force is his own deposition testimony, that testimony is incredible, and it thus cannot establish a genuine issue of material fact. Defendants' Summary Judgment Motion, ECF No. 64 at 1-2. The remaining evidence shows that the officers acted reasonably, Defendants argue, and thus they are entitled to summary judgment. *See id.*

The Court denies Defendants' summary judgment motion as to claims one, five, seven, eight, and eleven. The pleadings, discovery, and affidavits – including the police reports, the officers' declarations, and Plaintiff's deposition – show genuine and disputed issues of material fact about what happened and the reasonableness of the officers' conduct and use of force. These disputes cannot be resolved without weighing the evidence and determining credibility, which are functions for the jury, not for the judge at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**1. Fourth Amendment claim (claim one)**

Whether the police violated the Fourth Amendment during the detention here depends on the following: (1) in using force, did the officials "seize" Plaintiff within the meaning of the Fourth Amendment; (2) if so, was it reasonable to seize Plaintiff and was the amount of force objectively reasonable; and (3) was it reasonable to thereafter arrest Plaintiff for resisting arrest. *See Graham v. Connor,* 490 U.S. 386, 395-96 (1989); *Brower v. County of Inyo*, 489 U.S. 593, 595-600 (1989).

Here, the parties do not dispute that the police seized Plaintiff by using force to restrain his liberty, *see Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968), and by terminating his freedom of movement through means intentionally applied. *See Brower*, 489 U.S. at 596-99. The remaining inquiry has three parts: the reasonableness of the police's forcibly detaining Plaintiff (as opposed to Estrada); the reasonableness of the amount of force; and the reasonableness of the subsequent arrest. Because there are genuine issues of material fact as to all three, the Court denies summary judgment.

a. Mistaken detention of Plaintiff (as opposed to Estrada)

First, whether the mistaken detention of Plaintiff was reasonable depends on the following: (1) whether the police had probable cause to arrest the person sought (here, Estrada); and (2) whether the arresting officers reasonably believed Plaintiff was Estrada. *See Hill v. California*, 401 U.S. 797, 802-04 (1971). The parties do not dispute that the police had valid warrants for Estrada. That means that the police had probable cause to arrest the person sought (Estrada), which meets the first prong of the *Hill* test. *See* 401 U.S. at 802-04. But the parties dispute the reasonableness of mistaking Plaintiff for Estrada.

Defendants argue that police officers reasonably believed Plaintiff was Estrada because of the following: (1) they resemble each other, are "the same race and same sex,"and are close in height and weight; (2) Plaintiff lived at 40438 Davis Street, and the officer who last arrested Estrada said that Estrada lived there; and (3) Plaintiff disobeyed instructions to drop to the ground and instead ran. Defendant's Summary Judgment Motion, ECF No. 64, at 13-14.

From Plaintiff's perspective, police officers could not reasonably mistake Plaintiff for Estrada because of the following: (1) Estrada was 21 years younger (age 21 versus age 42), 50 pounds heavier, and 4 inches taller; (2) Estrada no longer lived at 40438 Davis Street on November 5, 2005;

ORDER (C 07-00005 LB)                                11

1  the warrant shows Estrada's address in Hollister; the record does not show when the police last
2  arrested Estrada or how and when they determined that he lived at Davis Street; and all of these facts
3  are relevant to whether the police's mistake was reasonable; and (3) Plaintiff did not run from the
4  police but instead dropped his bag, raised his arms, and ran only when Officer Baldocchi sicced the
5  police dog on him. *See, e.g.,* Estrada Warrant, Exh. F. to Fox Declaration, ECF No. 68 at 29;
6  Severance Report, Exh. D to Fox Declaration, ECF No. 68 at 24.
7      These are genuine issues of material fact that preclude summary judgment.

      b. <u>Reasonableness of the force</u>

9      Second, as to the reasonableness of the force, in making a seizure under the Fourth Amendment,
10  officers may take reasonable action to secure their own safety and the efficacy of their actions. *See*
11  *Muehler v. Mena*, 544 U.S. 93, 98-100 (2005). Put another way, "the right to make an arrest or an
12  investigatory stop necessarily carries with it the right to use some degree of physical coercion
13  thereof to effect it." *Graham*, 490 U.S. at 396. Evaluating the reasonableness of force is an
14  objective, fact-specific inquiry that requires balancing the individual's Fourth Amendment interests
15  and the government's interests in the application of force. *See id.* at 395-96. That means that a court
16  must "'balance the [type and] amount of force applied against the need for that force.'" *Bryan v.*
17  *McPherson*, No. 08-55622, 2010 WL 2431482, * 2 (9th Cir. June 18, 2010) (applying *Graham*
18  balancing test to the use of tasers) (*quoting Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)).
19      The following factors are relevant when evaluating the need for force: (1) the severity of the
20  crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and
21  (3) whether the suspect is resisting arrest or trying to evade arrest by flight. *Id.* at 396-97. Another
22  relevant consideration is that just because force later appears unnecessary does not mean that it is
23  unreasonable force barred by the Fourth Amendment. The reasonableness is judged from the
24  perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *See id.* at
25  396-97. Officers often make "split-second judgments – in circumstances that are tense, uncertain,
26  and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*
27      It is an issue of fact as to whether the police acted reasonably by being ready to deploy a dog and
28  a taser in response to the perceived threat of Estrada. The record is silent as to Estrada's criminal

1 history, the felony warrant was for vehicle theft (not for a more violent crime), and Plaintiff's
2 unrebutted testimony is that when he came out of his cottage, he saw Officer Baldocchi crouched
3 down with the dog and Officer Snelson pointing the taser at him. Plaintiff's Deposition at 39:12-22,
4 55:3-58:24. The officers' conduct may have been reasonable, but the Court cannot tell by the
5 pleadings, the discovery and disclosures on file, and affidavits. *See* Fed. R. Civ. P. 56(c).

In addition, the facts are disputed about whether Plaintiff posed a threat, whether he resisted
police instructions, and whether police used reasonable force to restrain him. It depends on what
happened when Plaintiff stepped out of his cottage. Defendants' version involves use of a dog and
then a taser after Plaintiff ignored police commands, ran into his cottage within arm's reach of
knives, and struggled despite repeated orders to stop. Plaintiff's version is that he stopped when he
saw the police, dropped his backpack and raised his hands in the air (which is corroborated by the
photograph of the backpack on the ground), and ran only after Officer Baldocchi released the dog.

The discovery also shows inconsistencies in the officers' accounts that may bear on the
reasonableness of their actions.[4] For example, the police reports describe Officer Ba1ldocchi
kicking or forcing the door open alone and do not mention any help by Officer Snelson. By contrast,
the declarations describe Officer Baldocchi pushing against the door with his right side, and both
officers pushing the door open together. Also, the reports differ as to when the dog ran in (before or
after Officer Baldocchi forced open the door), while both declarations state that the dog entered after
both officers forced open the door. The reports also differ as to whether Plaintiff fell to the ground
or complied with an order to get down. Neither mentions where Officer Snelson was when he shot
Plaintiff. Plaintiff says Officer Snelson remained outside the shed, while Officer Snelson says in his
declaration that he followed Officer Baldocchi and the dog into the shed. *See supra* pp. 6-7.

These are genuine issues of material fact that preclude summary judgment.

    c. <u>Reasonableness of Plaintiff's arrest</u>

Third, the reasonableness of Plaintiff's arrest for resisting arrest depends on whether officers had
probable cause that he committed a crime. *See Dubner v. City and County of San Francisco*, 266

---

[4] Eyewitness accounts often differ given that observations happen real-time, and people see things from different positions and perspectives. Also, declarations (often written with a lawyer's assistance) are made years later.

ORDER  (C 07-00005 LB)    13

1  F.3d 959, 964-65 (9th Cir. 2001); *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999).  That

2  inquiry turns on the resolution of the disputed facts about the circumstances of Plaintiff's arrest.

3        d.  <u>The fact disputes preclude summary judgment</u>

4     Fact disputes like these require a fact-finder to sift through the evidence, draw inferences from it,

5  and resolve credibility issues.  See *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005); *Santos*

6  *v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  That is why the Ninth Circuit has held on "'many

7  occasions that summary judgment . . . in excessive force cases should be granted sparingly.'"  *Smith*,

8  394 F.3d at 701 (*quoting Santos*, 287 F.3d at 853)).

9     Defendants nonetheless contend that the Court should grant summary judgment because

10  Plaintiff's only evidence of excessive force is his own deposition testimony, that testimony is

11  incredible, and it thus cannot establish a genuine issue of material fact.  Defendants' Summary

12  Judgment Motion, ECF No. 64 at 1-2.  Plaintiff's version is implausible, Defendants argue, for two

13  main reasons.  First, Plaintiff's testimony – that he outran a trained police dog – is not plausible

14  "[g]iven the perception-reaction time for [P]laintiff to observe, register and react to the dog's

15  release, the distances involved, and the time it would have taken him to turn around and run into the

16  structure, then turn again to close the door."  *Id.* at 12.  Second, Plaintiff's testimony – that Officer

17  Baldocchi told him to "get out" after pulling the dog off – is not plausible.  *Id.* at 13.

18     As legal authority for their argument, Defendants rely on *Jeffreys v. New York*, 426 F.3d 549,

19  554 (2nd Cir. 2005), and *Kircher v. Atchison, Topeka & Santa Fe Railway Company,* 32 Cal. 2d 176,

20  184 (Cal. 1948).  Defendants' Summary Judgment Motion, ECF No. 64 at 12.  In *Jeffreys*, the

21  Second Circuit upheld a district court's conclusion that no reasonable jury could believe Jeffreys's

22  testimony given stark discrepancies in Jeffreys's contradictory testimony that police threw him out

23  of a third-story window.  *See* 426 F.3d at 555.  *Kircher* suggests that a court can disregard a

24  plaintiff's story that "contravene[s] the laws of nature."  *See* 32 Cal. 2d at 184 (upholding jury's

25  verdict for the plaintiff in a personal injury action).  These cases do not alter the analysis here.

26     *Jeffreys* involved inconsistent stories by a defendant alleging excessive force publicly for the

27  first time nine months after an incident.  Jeffreys alleged that police officers investigating a rash of

28  public-school burglaries followed him to the school's third floor.  There, he alleged, one officer beat

1 him on the head and body with a flashlight, other officers arrived and beat him unconscious, he
2 woke up on the sidewalk, and officers must have thrown him out of the window because he did not
3 remember jumping. *See* 426 F.3d at 551. This account differed markedly from Jeffreys's three prior
4 statements that he jumped out of the window. Those statements were to medical personnel the day
5 of the incident, to police two days later, and to screening personnel one week later at the Department
6 of Corrections. Moreover, Jeffreys never raised police misconduct in his criminal case. *Id.* at 552.
7 Medical personnel also confirmed that he never lost consciousness, and medical records showed that
8 there were no blows to the head. *Id.* at 552-53. Jeffreys also could not identify the number of
9 officers or anything about their appearance. *Id.* at 552. The sole police officer witness testified that
10 Jeffreys jumped out of an open window. Given Jeffreys's contradictory testimony (including his
11 own statements to civilian witnesses) and the other inconsistencies with the evidence, the Second
12 Circuit concluded that summary judgment was appropriate. *See id.* at 555.

13 Plaintiff's testimony here is not riddled with the inconsistencies found in *Jeffreys*. Instead, what
14 Defendants challenge is whether Plaintiff's version could have happened, and whether Plaintiff is
15 credible. These are issues for the jury. *See Anderson*, 477 U.S. at 249, 255. Also, there are
16 substantial overlaps in the parties' versions of the facts, and many inferences can be draw from
17 them. Again, these are issues for the jury. *See id.* Moreover, as discussed above, the discovery and
18 affidavits – including the police reports, the officers' declarations, and Plaintiff's deposition – show
19 genuine and disputed issues of material fact about what happened and the reasonableness of the
20 officers' conduct and use of force.

21 The Court denies Plaintiffs' motion for summary judgment as to claim one on any Fourth
22 Amendment theory of liability about the officers' conduct.

23 **2. Related state law claims (claims five, six, seven, eight, and eleven)**

24 For the same reason, the Court denies summary judgment on the related state law claims for
25 assault, battery, intentional infliction of emotional distress, negligence, and deprivation of rights
26 secured by federal and state law under California Civil Code §§ 52 and 52.1 (claims five, six, seven,
27 eight, and eleven). As Defendants state in their motion, those claims depend on whether the officers
28 acted with reasonable force. Defendants' Motion, ECF 64 at 13-14; *see, e.g., Blankenhorn v. City of*

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

*Orange*, 485 F.3d 463, 486-487 (9th Cir. 2007) (assault, battery, negligence, and intentional infliction of emotional distress); *Sammon v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999) (police officer commits battery only when excessive force is used) (*citing* California Penal Code § 835(a)); *Jones v. Kmart Corp.*, 17 Cal.4th 329, 331 (1998) (elements of Civil Code § 52.1 claim essentially identical to section 1983 claim). Because Defendants are not entitled to summary judgment on their excessive force claim under section 1983, they are not entitled to summary judgment on the related state claims. *See Blankenhorn*, 485 U.S. at 487.

**B. First and Eighth Amendment Theories of Liability in Claim One**

Claim One also mentions – without any detail – the First Amendment (freedom of expression) and Eighth Amendment (freedom from cruel and unusual punishment). *See* ECF No. 75 at 3-4, ¶¶ 11-13. In joint management statements filed in April 2007 and September 2008, Plaintiff's counsel limited the claim to the Fourth Amendment. *See* ECF Nos. 16 at 3-4, 26 at 3. In any event, this case is about the Fourth Amendment and related state claims, not the First and Eighth Amendments. The complaint, the pleadings, and the discovery contain no facts about freedom of expression. The Eighth Amendment applies to prisoners and prohibits cruel and unusual punishment. *See Hudson v. McMillan*, 503 U.S. 1, 6-7 (1991); *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986). Accordingly, the Court grants summary judgment for Defendants on those theories of liability.

**C. Impermissible Police Action Based on Plaintiff's Ethnicity (Claims Three and Four)**

Plaintiff also asserts that the police officers acted because of his ethnicity in violation of 42 U.S.C. § 1981 and state law. Complaint, ECF No. 75 at 5-6 (claims three and four). To establish a 42 U.S.C. § 1981 claim, Plaintiff must prove that Defendants intentionally discriminated against him based on his race. *See General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1976); *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998). Similarly, California Civil Code § 51.7 prohibits Defendants' using force on account of Plaintiff's race, color, ancestry, or national origin. *See* California Civil Instruction 3023A; *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

The pleadings, discovery, and evidence – including Plaintiff's deposition and admissions at the hearing – do not show a genuine issue of material fact for trial. Indeed, at oral argument, Plaintiff

1  stated that he had only a subjective belief, and not any evidence, that Defendants were motived by
2  his ethnicity.  Defendants are entitled to summary judgment. *See Celotex*, 477 U.S. at 323-24.

### D. Municipal and Police Chief Liability (Claims Two, Nine, and Ten)

Plaintiff asserts that the City of Fremont and the Chief of Police failed to train police officers and had a policy and practice of ignoring excessive force and thus are liable for the officers' actions under *Monell v. Department of Social Services*, 463 U.S. 658 (1978), and state law.  ECF No. 75 at 4, 7-9 (claims two, nine, and ten).  Because there are no genuine issues of material fact, the Court grants summary judgment on claims two, nine, and ten (to the extent it is based *respondeat superior* liability under section 1983, a failure to train, or a policy and practice of ignoring excessive force). *See Celotex*, 477 U.S. at 323-24.

#### 1. *Monell* claim

The City is not liable under section 1983 solely because it employs police officers who use excessive force or commit torts. *See, e.g., Monell* at 691.  Instead, Plaintiff must identify a municipal "policy" or "custom" that caused the injury.  Put another way, a municipal's deliberate conduct must be the moving force behind the injury: there must be a causal link between the municipal action and the deprivation of the federal right.  *Id.* at 694.

Inadequate police training is a basis for liability under section 1983 if the following factors are established:  (1) the training is inadequate for the tasks that police officers perform; (2) the failure to train amounts to deliberate indifference to the rights of persons like Plaintiff who come into contact with the police; and (3) the inadequate training actually caused the constitutional injury.  *See City of Canton v. Harris*, 489 U.S. 379, 388-89 (1989); *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).  That happens when the municipality makes a deliberate, conscious choice, and the resulting deficient training has a direct, causal link to the deprivation of federal rights.  *See City of Canton*, 489 U.S. at 388.

Similarly, a deliberate policy of failing to investigate (and therefore tolerating) excessive force also requires a deliberate choice that has a direct, causal link to the deprivation of rights.  *See Saman v. Roberts*, 173 F.3d 1150, 1157 (9th Cir. 1999) (finding no *Monell* liability because there was no excessive force); *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997) (failure to fire or

reprimand officers shows policy of deliberate indifference to their misconduct).

Plaintiff alleged that Fremont police officers engaged in a pattern of excessive force and false arrests, the City and Police Chief had notice of this practice "on more than one occasion," and their deliberate indifference to the practice (shown by their failure to address the pattern by training or other supervisory response) caused the excessive force here. Complaint, ECF No. 75 at 4-5, ¶¶ 15-16. Defendants respond that the pleadings, discovery, and declarations show no evidence of any policy, practice, or indifference, let alone a causal link to the force used here. At oral argument, the Court asked Plaintiff whether he had any evidence – other than evidence about what happened to him – about similar police conduct. Plaintiff responded that he did not. A sporadic incident cannot establish *Monell* liability. *See Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). Moreover, there is no evidence of a policy or practice that caused the conduct here. *See Monell*, 436 U.S. at 694-95. The Court grants summary judgment for Defendants as to claim two.

**2. State law claims**

Similarly, because Plaintiff's evidence involves only the November 5 incident, and not any failure to train or indifference to a pattern of police misconduct, the Court grants summary judgment to Defendants on claim nine.

As to claim ten, the Court also grants summary judgment to the extent that claim ten is based on a failure to train and a practice and policy of ignoring excessive force. Also, there is no *respondeat superior* liability under section 1983. *See Los Angeles Police Protective League v. Gates,* 907 F.2d 887, 889 (9th Cir. 1990).

In claim ten, however, Plaintiff alleges *respondeat superior* liability generally. The City and Police Chief may have vicarious liability under state law for acts or omissions of the police officers acting within the scope of their employment. *See, e.g.*, California Government Code § 815.2(a) (public entity is liable for the acts and omissions of an employee within the scope of employment to the same extent as the employee); *Blankenhorn*, 485 F.3d at 488 (section 815.2(a) allows for vicarious liability of public entity for officer's excessive force); *accord Edgerly v. City & County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (*citing Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc)). Here, Defendants asserts only that because there is no excessive

force, there is no vicarious liability. Defendant's Summary Judgment Motion, ECF 64 at 20. Because Defendants are not entitled to summary judgment on their excessive force claims, they are not entitled to summary judgment on claim ten for vicarious liability under state law.

## V.   CONCLUSION

The Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion for Summary Judgment. The Court **DENIES** summary judgment on claims one (for liability under the Fourth Amendment), five, six, seven, eight, ten (*respondeat superior* liability under state law for excessive force), and eleven. The Court **GRANTS** summary judgment on claims one (for theories of liability under the First and Eighth Amendments), two, three, four, nine, and ten (*respondeat superior* liability under section 1983 and liability based on a failure to train and a policy and practice of ignoring excessive force).

The Court **FURTHER ORDERS** the parties to appear for a further settlement conference before United States Magistrate Judge Maria-Elena James on October 6, 2010, at 10 a.m., at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, 94102.

All dates in the March 6, 2010, Scheduling Order remain in effect. *See* ECF No. 56.

**IT IS SO ORDERED.**

Dated: July 21, 2010

LAUREL BEELER
United States Magistrate Judge